UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER S. SIMCOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-01488-SEB-MJD |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of SSA, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Christopher Simcoe ("Plaintiff" or "Simcoe") requests judicial review of the final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his applications for Social Security Disability Insurance Benefits ("DIB") under Title II and

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").

*See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate

Judge recommends that the decision of the Commissioner be **AFFIRMED.**

## Procedural History and Background

Simcoe filed applications for DIB and SSI on August 23, 2011, alleging an onset of

disability on March 12, 2009. [R. at 18.] He was 39 years old at the time of the alleged onset, and

he had past work experience as a retail store assistant manager, as a restaurant assistant manager,

and as a warehouse truck loader. [R. at 40-42.] He alleged disability due to vascular disease in

his left leg; a fracture in his right hand; depression; obesity; and a cervical neck injury. [R. at 20-

22; *see also* Dkt. 16 at 2 (Pl.'s Br.)][1]

---

[1] Plaintiff recited the relevant factual and medical background in more detail in his opening brief. [*See* Dkt. 16.] The
Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 17.] Because these facts

Simcoe's applications were denied initially on October 11, 2011 and on reconsideration on December 19, 2011. [R. at 18.] Simcoe requested a hearing, which occurred before Administrative Law Judge ("ALJ") Ronald Jordan on April 11, 2013. [R. at 35.] Also present at the hearing were Plaintiff's attorney, Kenneth Schuck, and a vocational expert ("VE"), Tanya Owen. [*Id.*] The ALJ determined that Plaintiff had not been under a disability at any time from the alleged date of onset through the date of the ALJ's May 16, 2013 decision. [R. at 29.] The Appeals Council denied Plaintiff's request for review on July 12, 2014, [R. at 1-4], rendering the ALJ's decision final. Plaintiff filed his complaint in this Court on September 12, 2014.[2] [Dkt. 1.]

## **Applicable Standard**

To be eligible for SSI or DIB, a claimant must have a disability under 42 U.S.C. § 423.[3] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

---

involve Plaintiff's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and will articulate only specific facts as needed herein.

[2] Although a claimant has only 60 days to request judicial review of the Appeals Council's denial, the 60 days do not begin to run until the claimant receives notice of the Council's decision. [*See* R. at 3.] Unless the claimant shows otherwise, this notice is assumed to occur five days after the date of the Council's decision, [*see id.*], such that Plaintiff's complaint in this case was timely.

[3] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . .

[and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

**The ALJ's Decision**

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. [R. at 20.] Applying the five-step analysis, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity ("SGA") since March 12, 2009, the alleged onset date. [*Id.*] At step two, the ALJ found that Plaintiff suffered from the severe impairments of "peripheral vascular disease of the left lower extremity" and "mild obesity." [*Id.*] He also noted that Plaintiff had previously injured his hand and had a lingering impairment known as a "boxer's facture," [*id.*], but he found that this impairment was not severe. [R. at 21.] Similarly, the ALJ noted that Plaintiff claimed an inability to work due to a prior neck injury and depression, but he found that these impairments were not severe. [R. at 21-22.]

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed impairment. [R. at 22.] He specifically considered and rejected Listing 4.11 (chronic venous insufficiency). [*Id.*] He also considered Plaintiff's obesity, but he noted that "there is no longer a specific listing for this impairment," and he stated that "the evidence fails to demonstrate that this impairment, considered alone or in combination with all other impairments, meets or medically equals any listing." [*Id.*]

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff could perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: lift, carry, push, or pull ten pounds occasionally and five pounds frequently; stand and walk for two hours in an eight hour workday day at intervals of five to ten minutes spread evenly throughout the day; sit for six hours during an eight hour workday, but must have the opportunity to stand at his work station up to five minutes each hour at his discretion; occasionally stoop, balance, crouch, crawl,

kneel, and climb stairs or ramps; no work around hazards such as unprotected
heights or unguarded, dangerous moving machinery; no climbing ladders,
scaffolds, or ropes; no walking on wet or uneven surfaces.

[R. at 22.] At step four, the ALJ concluded that this RFC did not allow Plaintiff to perform any

of his past relevant work. [R. at 28.] The ALJ thus proceeded to step five of the sequential

evaluation process. He noted that "[t]ransferability of job skills is not material to the

determination of disability," and he then received testimony from the VE indicating that a

hypothetical person of Plaintiff's age, education, work experience, and residual functional

capacity could perform jobs such as check cashier, telemarketer, and interviewer. [R. at 28-29.]

Because these jobs existed in significant numbers in the national economy, the ALJ concluded

Plaintiff was not disabled.

## Discussion

Plaintiff challenges the ALJ's decision on three grounds. He first contends that the ALJ's

step five finding was improper. [Dkt. 16 at 6.] He then argues that the ALJ did not properly

evaluate the opinion of examining physician Dr. James Lewis. [*Id.* at 8.] He finally contends that

the ALJ erred in evaluating Plaintiff's credibility. [*Id.* at 12.]

### A. Step Five Determination

At step five of the sequential evaluation process, an ALJ determines whether the

claimant's RFC, age, education, and work experience allow the claimant to perform any jobs in

the national economy. 20 C.F.R. § 404.1560(c). If so, and if the jobs exist in significant numbers

in the national economy, the claimant is not disabled. *Id.* The ALJ in this case determined that

Plaintiff could perform jobs such as check cashier (with 10,000 jobs in Indiana and 600,000 jobs

in the national economy); telemarketer (with 5,000 jobs in Indiana and 340,000 jobs in the

national economy); and interviewer (with 500 jobs in Indiana and 32,000 jobs in the national

economy). [R. at 29.] Plaintiff appears to concede that the check cashier and telemarketer jobs existed in significant numbers in the national economy, but he contends that it was improper for the ALJ to rely on these jobs because the ALJ did not make any specific findings about whether Plaintiff had jobs skills that were transferable to these occupations. [Dkt. 16 at 6.] Plaintiff then argues that the remaining job—interviewer—did not exist in significant numbers in the national economy, such that it could not support a finding that Plaintiff was not disabled. [*Id.* at 7.]

### 1. Transferability of Job Skills

The Dictionary of Occupational Titles defines check cashier and telemarketer as "semi-skilled" jobs. [*See* R. at 63.] As Plaintiff notes, the ALJ did not make any specific finding about whether Plaintiff's past work had conferred skills that were transferable to these occupations. [Dkt. 16 at 6.] Instead, the ALJ wrote only that "[t]ransferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable skills." [R. at 28.]

Plaintiff contends this was erroneous; he argues that before using an occupation to support a step five determination, an ALJ "**must** make a finding that identifies claimant's acquired work skills and make specific findings about the transferability of the skills." [Dkt. 16 at 6 (emphasis added).] As support, Plaintiff cites Social Security Ruling ("SSR") 82-41. [*Id.*] This ruling requires an ALJ "to make certain findings of fact" about transferability of jobs skills, but only in cases "[w]hen the issue of skills and their transferability must be decided." SSR 82-41. The question, then, is whether Plaintiff's situation presented such a case.

The Medical-Vocational Rules referenced in the ALJ's decision set out a framework for assessing the transferability of job skills. These rules—also known as the "grids"—"are based

on vocational factors of age, education, and work experience in combination with each of the possible strength categories of work, i.e. sedentary, light, medium, heavy, and very heavy." *Martinez v. Colvin*, No. 12 C 3888, 2013 WL 6696177, at *14 (N.D. Ill. Dec. 18, 2013); *see also* 20 C.F.R. pt. 404, subpt. P, App. 2 (grids). If a claimant's vocational factors and RFC match the criteria of a given rule, then the rule directs the ALJ's conclusion as to whether the claimant is disabled. *Martinez*, 2013 WL 6696177, at *14. Under certain of these rules, the transferability of job skills is irrelevant. *See, e.g., id.* at *15 ("If Plaintiff was capable of performing the full range of light work, the Grids direct[] a decision of 'not disabled' regardless of whether Plaintiff had transferable skills from her previous work.").

In this case, the ALJ assessed Plaintiff's vocational factors and found that he was a "younger individual" with "at least a high school education [who] is able to communicate in English." [R. at 28.] The grids indicate that a person with these vocational factors and the ability to perform the full range of sedentary work is not disabled, regardless of the transferability of job skills. *See* 20 C.F.R. pt. 404, subpt. P, App. 2 (Medical Vocational Rules 201.27 (no disability when claimant has only unskilled work experience), 201.28 (no disability when plaintiff has semi-skilled or skilled work experience, even if "skills [are] not transferable")).

The ALJ in this case then noted that the grid was not directly applicable to Plaintiff's situation because Plaintiff could not perform the entire range of sedentary work; rather, as described above, Plaintiff's RFC included numerous additional limitations. [*See* R. at 22.] These additional limitations, however, do not alter the effect of the grids on the issue of transferability of job skills. As the court explained in *Martinez*:

> The ALJ recognized that because Plaintiff has limitations impeding the full range of light work, the Grids were not conclusive and a VE had to be consulted. Nevertheless, because **the Grids presumptively determine that transferability of skills is not an issue** for a person of Plaintiff's age, education, and

communication skills, the **ALJ was not required by SSR 82–41 to determine whether she has any transferable work skills**.

2013 WL 6696177, at *15 (emphasis added) (citations omitted). The situation in this case is analogous. The grids presumptively determine that transferability of skills is not an issue for someone—such as Plaintiff—who is a younger individual, who has at least a high school education, and who can communicate in English. *See* 20 C.F.R. pt. 404, subpt. P, App. 2 (Medical Vocational Rules 201.27, 201.28). Thus, even if Plaintiff had limitations that precluded direct application of the grids, the ALJ in this case—just as in *Martinez*—was not required to make any specific findings about transferability. The ALJ was therefore entitled to make his step five determination without considering transferability, and he did not violate SSR 82-41 in doing so. As a result, substantial evidence supports his determination that Plaintiff could perform the check cashier and telemarketer occupations.[4]

### 2. Significant Numbers in the National Economy

Even if the ALJ had erred in concluding that Plaintiff could work as a cashier or telemarketer, the ALJ also found that Plaintiff could work as an interviewer. [R. at 29.] Plaintiff appears to concede that he could perform this job, [Dkt. 16 at 6], but he argues that it did not exist in "significant numbers" in the national economy because there were only 500 such jobs in Indiana and 32,000 such jobs nationally. [*Id.*]

At step five, a job exists in "significant numbers" in the national economy when it exists in significant numbers either in 1) the "region where [the claimant] live[s]" or 2) in "several

---

[4] In reply, Plaintiff makes a somewhat vague argument that "[i]f transferability of job skills is not an issue, then jobs that required transferable skills should not be accountable in determining whether an individual can perform other work at step 5." [Dkt. 21 at 1.] This argument appears to be backwards: if, based on the use of the grids, the ALJ need not consider whether the plaintiff had transferable skills, then *any* job consistent with the Plaintiff's RFC and vocational factors—*regardless* of the skills required—is a job that the Plaintiff could perform. Thus, *any* such job is "accountable in determining whether an individual can perform other work at step 5."

other regions of the county." 20 C.F.R. § 404.1566(a). Plaintiff does not argue that Indiana is the incorrect region to consider for the first criterion, but he asserts that 500 jobs in the state is not a significant number. [Dkt. 16 at 6.]

This argument is not supported by case law. Plaintiff himself acknowledges that the Seventh Circuit has previously cited with approval cases from other circuits that found as few as 174 jobs to be a significant number. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 is a significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir.1987) (174 is a significant number)). The Seventh Circuit also showed such approval in *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("As few as 174 jobs has been held to be significant[.]"). The Court in this case therefore adopts a similar approach and concludes that 500 jobs in the region is a significant number.

In addition, the VE noted that 32,000 interviewer jobs exist in the national economy. [R. at 29.] Plaintiff argues that this is not a significant number, and he asserts that there is little circuit court precedent addressing what constitutes a significant number of jobs nationwide. [Dkt. 16 at 7.] The case law Plaintiff does cite, however, undercuts his argument: in *Gutierrez v. Commissioner of Social Security*, the Ninth Circuit concluded that 25,000 jobs nationwide is a significant number. 740 F.3d 519, 529 (9th Cir. 2014). The court acknowledged that this conclusion was "a close call," *id.*, but, given that the VE in this case identified several thousand more jobs than in *Gutierrez*, it is reasonable to conclude that 32,000 is a significant number. Other circuit precedent supports this conclusion. *See, e.g., Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in state and 10,000 jobs in nation were significant numbers); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (650 jobs in state and 30,000 jobs in nation were significant numbers). Based on these cases, the Court concludes that the VE's testimony that

32,000 interviewer jobs exists in the nation is substantial evidence that there was a "significant number" of such jobs in the national economy.

Plaintiff finally argues that it is improper for this Court to decide whether 500 or 32,000 jobs is a significant number. [Dkt. 16 at 7.] He notes that because the ALJ found that Plaintiff could perform the cashier and telemarketer position, the ALJ did not specifically consider whether the interviewer position itself existed in significant numbers, and he notes that such a conclusion should typically be left to the ALJ. [Dkt. 16 at 7 (citing *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (noting that numerical significance is a matter of fact for the ALJ to decide in the first instance)).]

In general, however, a court will find "that the number of jobs [is] not significant only in the situations where the VE was not sure of the numbers provided or did not indicate the number of national positions at all." *Isaacs v. Barnhart*, No. 4:05-CV-00185-DFH-WGH, 2006 WL 3240114, at *9 (S.D. Ind. Oct. 13, 2006) (collecting cases where, e.g., VE's testimony was "based on guess or surmise"). In this case, in contrast, the ALJ confidently and unequivocally stated that there were 500 and 32,000 interviewer positions in Indiana and in the nation. [R. at 63.] Thus, even if the ALJ did not specifically address whether the interviewer position, in isolation, existed in significant numbers, the Court is confident that the evidence supports such a conclusion, and remand is therefore unnecessary. *See Isaacs*, 2006 WL 3240114, at *9 ("In [plaintiff's] case, the vocational expert provided numbers confidently for both local and national positions. Therefore, the situation where local jobs in a two-hundred range or a national number of jobs were insufficient do not apply in the present case."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (no remand necessary when "it is predictable with great confidence that the agency will reinstate its decision").

### B. Evaluation of Dr. Lewis's Opinion

In September 2011, Dr. James Lewis performed a consultative examination of Plaintiff. [R. at 214.] Plaintiff told Dr. Lewis that he was disabled because of pain and swelling from vascular disease in his left leg. [*Id.*] On examination, Dr. Lewis found that the left leg was "swollen and blue with varicosities extending from the groin to and then covering the entire foot." [R. at 215.] Elevation and compression helped control the swelling, but Dr. Lewis nonetheless wrote "that this swelling is significant enough that [Plaintiff] is disabled." [*Id.*] The ALJ gave Dr. Lewis's opinion "little weight," [R. at 27], and Plaintiff now argues that the ALJ erred in doing so. [Dkt. 16 at 8.]

The SSA has promulgated regulations setting out how ALJs should evaluate opinions from medical sources. Relevant factors include the nature of the relationship between the claimant and the medical source (e.g., examining or treating); the "supportability" of the opinion; the consistency of the opinion with the record as a whole; any relevant specialization; and "any other factors . . . which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c). The regulations also provide that, regardless of these factors, ALJs "will not give any special significance" to medical opinions on issues reserved to the Commissioner, such as whether a claimant can perform at the level of a given RFC or whether a claimant is disabled. *Id.* § 404.1527(d)(3).

The ALJ in this case properly applied these regulations in evaluating Dr. Lewis's opinion. First, the ALJ noted that Dr. Lewis had written that "[Plaintiff] is disabled." [R. at 27.] Whether a claimant is disabled is, as noted above, an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that

you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ was therefore justified in choosing not to credit this statement. [R. at 27.]

Plaintiff nevertheless argues that Dr. Lewis's opinion was not merely a statement that Plaintiff was disabled. [Dkt. 16 at 8-9.] He notes that "an opinion by a physician that an individual is unable to work full-time is not necessarily the same thing as a statement that the individual is disabled," and he cites cases in which courts have recognized that a doctor may properly opine on whether a claimant could "hold down a full time job." [*Id.* at 9 (citing *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).] Plaintiff may be correct, but his argument is irrelevant to this case: Dr. Lewis did not opine about whether Plaintiff could "hold down a full time job." Instead, he specifically wrote that Plaintiff "is disabled." [R. at 215; *see also id.* ("The gentleman's disability is in his left leg."). He offered no other insight on Plaintiff's ability to work, [*see* R. at 214-15], and so his opinion was in fact a conclusion about whether Plaintiff was disabled. This conclusion is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(d)(1), and the ALJ therefore did not have to credit it.

Plaintiff also argues (correctly) that the even if the ALJ did not have to agree with Dr. Lewis's conclusion about Plaintiff's disability, the ALJ was not free to ignore it. *See, e.g.*, SSR 95-6p (noting that opinions on issues reserved to the Commissioner "can never be entitled to controlling weight or given special significance," but that such opinions "must not be disregarded"). Here, however, the ALJ did not disregard Dr. Lewis's opinion. Although he gave "no weight" to the statement that Plaintiff was disabled, he still considered Dr. Lewis's report at length. [R. at 25, 27.] He also explained that he discredited the opinion not simply because part of it was a conclusion on an issue reserved to the Commissioner, but also because it was "not consistent with the examiner's own clinical findings;" because it was not consistent with "the

clinical findings and treatment history demonstrated by the evidence;" and because it was "not consistent with the claimant's work history." [R. at 27.] As explained below, a review of the record supports these conclusions.

### 1. Dr. Lewis's Own Findings

The ALJ noted that Dr. Lewis's exam did not reveal "any abnormalities in any of the claimant's lower extremity joints, any neurological defects, or limitations of balance or coordination." [R. at 25 (citing R. at 214-215). Further, the ALJ observed that Dr. Lewis found that elevation of Plaintiff's leg or compression of the veins in the leg could prevent the painful swelling that allegedly caused Plaintiff's disability. [*Id.* (citing R. at 215).] The ALJ thus concluded that Dr. Lewis's own findings did not support his conclusion that Plaintiff was disabled, [R. at 27], and he therefore properly concluded that the opinion was entitled to little weight. *Cf.* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

### 2. Other Medical Evidence

The ALJ noted that Dr. Lewis's opinion was not consistent with other medical evidence in the record. [R. at 27.] The ALJ specifically cited reports from 2012 and 2013. [*Id.* (citing Exhibits 7F, 8F, and 10F). These reports stated that even though Plaintiff "certainly [did] have chronic deep venous insufficiency," [R. at 232], he was nonetheless able to "ambulate well," [*id.*], and could control the symptoms of his condition with treatment such as vascular socks and elevation of his leg at certain times throughout the day. [R. at 232, 234, 241.] The ALJ concluded that these reports were not consistent with Dr. Lewis's finding of disability, [R. at 27], and he was accordingly justified in discounting Dr. Lewis's opinion. *Cf.* 20 C.F.R. § 404.1527(c)(4)

("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Plaintiff challenges this conclusion on the grounds that the ALJ was "playing doctor" by deciding that Dr. Lewis's opinion was inconsistent with other medical evidence. [Dkt. 16 at 13.] "Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Moreover, the ALJ evaluated the medical evidence in the context of formulating Plaintiff's RFC. [R. at 22-28.] This process is an administrative determination reserved to the Commissioner, and it specifically requires the ALJ to compare any medical opinions to other evidence in the record. *See, e.g.*, SSR 96-5p. ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). Thus, far from playing doctor, the ALJ in this case was merely fulfilling his obligation to weigh the conflicting evidence and evaluate Dr. Lewis's opinion in light of "all the evidence in the case record." *Id.*

Plaintiff then suggests that the ALJ did not properly account for the opinions of the state agency reviewing doctors. [Dkt. 16 at 10.] He notes that these doctors cited Dr. Lewis's findings in support of their own conclusions, [R. at 223-24, 230], such that Dr. Lewis's findings actually were consistent with at least some of the other medical evidence in the record. [Dkt. 16 at 10.]

This argument does not support Plaintiff's case: the state agency physicians did cite Dr. Lewis's exam, but they also opined that Plaintiff was able to perform a range of light work with only a few postural limitations. [R. at 223-227; *see also* R. at 27.] Thus, even if the state agency doctors did consider the findings from Dr. Lewis's exam, they came to a distinctly different conclusion about whether Plaintiff was disabled. If anything, then, the reports from the state

agency physicians underscore the fact that Dr. Lewis's opinion on disability was the true outlier in the medical evidence, such that the ALJ properly discounted this opinion.

Plaintiff next contends that the ALJ's decision to give more weight to medical sources other than Dr. Lewis violated the rule set out in *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011). [Dkt. 16 at 10.] In that case, the court wrote that "[w]hen an ALJ decides to favor another medical professional's opinion over that of a **treating** physician, the ALJ must provide an account of what value the treating physician's opinion merits." *Jelinek*, 662 F.3d at 811 (emphasis added). Also, an "ALJ who chooses to reject a **treating** physician's opinion must provide a sound explanation for the rejection." *Id.* (emphasis added).

This rule is inapplicable to this case. Dr. Lewis was a consultative examiner, [*see* R. at 214-15], and he therefore did not have a treating relationship with the claimant. Plaintiff concedes as much in his reply brief, but he argues that the ALJ still "must provide reasons" for discounting Dr. Lewis's opinion. [Dkt. 21 at 4.] As described above, however, the ALJ **did** provide reasons for discrediting Dr. Lewis's opinion. Further, to the extent that Plaintiff argues the ALJ did not provide *enough* reasons because he did not specifically discuss every factor set out in the SSA's regulations, [*see* Dkt. 16 at 12; Dkt. 21 at 4-5], this argument is meritless. *See, e.g.*, *Hanenberger v. Colvin*, No. 14-CV-10-CJP, 2014 WL 7647309, at *10 (S.D. Ill. Jan. 16, 2014) (citing *Henke v. Astrue*, 498 Fed. App'x 636, 640 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)) ("[T]he Seventh Circuit has held that an ALJ need not explicitly weigh every factor when deciding to reject a medical opinion[.]").

Plaintiff finally contends that the ALJ did not properly consider the opinion of Dr. Sarab Alfata. [Dkt. 16 at 10.] This doctor opined that Plaintiff would need to elevate his leg for 10-15 minutes every two hours to help control his vascular disease. [R. at 239.] The ALJ evaluated the

factors set out in 20 C.F.R. § 404.1527(c) and gave this opinion "some" weight. [R. at 28.] Plaintiff now argues that the ALJ's step five conclusion did not account for the need to elevate Plaintiff's leg. [Dkt. 16 at 10.]

At the hearing, however, the ALJ asked the vocational expert whether an employer would accommodate an individual's need to elevate his leg during the usual breaks in a workday. [R. at 64.] The VE answered that the employer would, [R. at 64], and the ALJ thus concluded that his step five findings were consistent with Alfata's statements about the need for elevation. [R. at 28.] Also, although Plaintiff notes that the VE did not specifically indicate how long the usual breaks in a workday last, it is clear that they would be long enough to allow Plaintiff to elevate his leg for 10-15 minutes. *See, e.g.*, *Burnam v. Colvin*, 525 F. App'x 461, 463 (7th Cir. 2013) ("[B]reak periods . . . generally are limited to 10 or 15 minutes every 2 hours[.]"); *Jensen v. Astrue*, No. 11 C 4423, 2012 WL 6642449, at *5 (N.D. Ill. Dec. 20, 2012) (breaks customarily last 15 minutes). Dr. Alfata's opinion thus supports the conclusion that Plaintiff would be able to work, and this opinion further underscores that Dr. Lewis's opinion to the contrary was inconsistent with the other medical evidence.

### 3. Plaintiff's Work History

The ALJ finally observed that Dr. Lewis's opinion was inconsistent with Plaintiff's work history. [R. at 27.] As the ALJ noted, Plaintiff's problems with his leg began in 1991, [*see* R. at 248], and persisted from that time forward. [R. at 27.] Despite this, Plaintiff spent the years between 1991 and his alleged date of onset working as an assistant manager at Wal-Mart, as a truck loader at a warehouse, and as a manager at a restaurant. [R. at 40-42.] The ALJ also observed that there was little evidence of any worsening of Plaintiff's condition, [R. at 24], and that Plaintiff submitted no medical records from times near the alleged March 2009 date of onset. [*Id.*] Finally, he noted that even after Plaintiff's work at the restaurant ended, Plaintiff tried to

remain self-employed by occasionally mowing lawns for a lawn care business. [R. at 24.] The

ALJ thus concluded that Plaintiff's impairment did not prevent him from working, [R. at 27], and

he was therefore justified in deciding to discredit Dr. Lewis's contrary opinion. *See* 20 C.F.R. §

404.1527(c)(3).

Plaintiff nevertheless contends that the ALJ's conclusion on this issue was erroneous.

[Dkt. 16 at 11.] He notes that the Seventh Circuit has often held that "even individuals who are

disabled have coped with their impairments and [have] continued working long after they may

have been entitled to benefits." [*Id.* (citations omitted).] Plaintiff thus suggests that his work

history in this case does not demonstrate that he is not disabled. [*See id.*]

Plaintiff is correct that the ability to work does not necessarily imply that a claimant is

not entitled to benefits. *See, e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)

(citations and internal quotation marks omitted) ("Having a job is not necessarily inconsistent

with a claim of disability; the claimant may have a careless or indulgent employer or be working

beyond his capacity out of desperation."). And perhaps, if the ALJ had based his decision to

discount Dr. Lewis's opinion entirely on Plaintiff's work history, the ALJ would have erred. As

noted above, however, the ALJ offered numerous other reasons for discounting Dr. Lewis's

opinion. Further, the regulations governing the evaluation of medical opinions explicitly state

that the ALJ should consider the consistency of a medical opinion "with the **record as a whole**."

20 C.F.R. § 404.1527(c)(4) (emphasis added). Here, the record contained evidence that Plaintiff

could work at a level that was inconsistent with Dr. Lewis's finding of disability, and the ALJ

therefore acted correctly in considering this inconsistency. *See id.*; *see also Brown v. Astrue*, No.

1:10-CV-00450, 2011 WL 5102276, at *10 (N.D. Ind. Oct. 27, 2011) (upholding ALJ's decision

where claimant's "work history was just one factor that went into the ALJ's rejection of [the

doctor's] opinion"). Thus, for all the reasons outlined above, the ALJ's evaluation of Dr. Lewis's opinion was proper, and this evaluation presents no basis for remanding the ALJ's decision.

### C. Evaluation of Plaintiff's Credibility

Plaintiff finally contends that the ALJ "improperly evaluated the credibility of [his] symptom testimony." [Dkt. 16 at 12.] As with the evaluation of medical opinions, the SSA's regulations set out certain factors to use in evaluating a claimant's credibility. These factors include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; any precipitating and aggravating factors; the types and effects of any medication; any treatment other than medication; any other measures used to relieve symptoms; and any other factors that may be relevant. 20 C.F.R. § 404.1529(c). The ALJ in this case addressed each of these factors, [R. at 23-26], and he found that Plaintiff's allegations of disabling symptoms were "not entirely credible." [R. at 23.] Plaintiff now attacks this negative credibility finding.

Plaintiff first argues that the ALJ gave too much weight to Plaintiff's activities of daily living. [Dkt. 16 at 11.]  On this issue, the ALJ noted that Plaintiff could care for himself and for his nine-year old daughter; could perform chores such as cooking and shopping; and could at least occasionally mow lawns as part of his law care business. [R. at 23.] He acknowledged that sometimes Plaintiff did such activities "at a slower pace," but he still found that the activities "demonstrate a higher level of functioning than [Plaintiff's] allegations indicate." [*Id.*]

Plaintiff contends this finding was erroneous because activities of daily living do not involve the "sustained activity necessary for full-time work," and therefore cannot establish that a person can work at the level of substantial gainful activity. [Dkt. 16 at 11.] As support, he cites cases in which the Seventh Circuit has "urged caution in equating these activities with the challenges of daily employment in a competitive environment." *Beardsley v. Colvin*, 758 F.3d

834, 838 (7th Cir. 2014); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home."). Those same cases, however, acknowledge that activities of daily living **are** relevant in assessing a claimant's credibility. *See, e.g.*, *Beardsley*, 758 F.3d at 838 ("[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability[.]"); *Mendez*, 439 F.3d at 362 (acknowledging that giving daily activities "[s]ome weight is appropriate"). In this case, "some weight" is exactly what the ALJ afforded to Plaintiff's activities of daily living: he did not rely solely on these activities for his credibility finding; rather, he went on to address the remaining factors outlined in 20 C.F.R. § 404.1529(c). [R. at 24-26.] It was therefore not inappropriate for the ALJ to account for Plaintiff's daily activities in his credibility evaluation.

Plaintiff then argues that the ALJ should have given more weight to Plaintiff's statements because they were consistent with Dr. Lewis's finding that Plaintiff was disabled. [Dkt. 16 at 12.] As explained above, however, the ALJ properly discounted Dr. Lewis's opinion because it was undermined by the doctor's own findings and by the other medical evidence in the record. Dr. Lewis's opinion thus does little to bolster Plaintiff's credibility. Further, if Plaintiff's statements were in fact consistent with Dr. Lewis's opinion, then Plaintiff's statements—just like those of Dr. Lewis—were inconsistent with the rest of the medical evidence in the record. This inconsistency, in turn, reduces the credibility of Plaintiff's own statements, such that the ALJ was justified in concluding that Plaintiff was not entirely credible. *See* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence[.]").

Plaintiff then challenges the ALJ's treatment of the opinions from the state agency reviewing physicians. In both opinions, the doctors found "the claimant's statements about his symptoms to be credible" because of the "general consistency of the claimant's description of his symptoms with progress notes and other medical evidence." [R. at 227, 230.] This could suggest that the ALJ should have accorded more weight to Plaintiff's statements that he was unable to work. Both state doctors, however, determined that Plaintiff was able to perform work at a light level, albeit with certain postural limitations. [R. at 223-227; *see also* R. at 27.] Thus, even if Plaintiff's statements in the record at the time of the state agency evaluations were credible, they were only credible to the extent that they supported an ability to work. The ALJ was therefore justified in finding that any later statements indicating that Plaintiff was disabled were not credible. Indeed, the fact that Plaintiff's later statements contradicted the state agency physicians' opinions is itself evidence that Plaintiff's later allegations were not credible. *See* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are . . . any conflicts between your statements and the rest of the evidence, including . . . statements by your treating or nontreating source[.]"). Hence, even if some of Plaintiff's statements were consistent with the medical evidence, it was still reasonable for the ALJ to conclude that Plaintiff's allegations of disability were not entirely credible.

Plaintiff next challenges the ALJ's finding that Plaintiff received relatively little treatment for his allegedly disabling impairments. [Dkt. 16 at 11; Dkt. 21 at 4.] Such lack of treatment is a valid basis for an adverse credibility finding. *See* 20 C.F.R. § 404.1529(c)(3)(v); *see also, e.g.*, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (noting that lack of treatment "is probative of exaggeration" of symptoms). Before making such an adverse determination, however, the ALJ must "consider[] any explanations that the individual may

provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p. In this case, Plaintiff contends the ALJ violated this rule because he did not account for Plaintiff's inability to pay for medical treatment. [Dkt. 16 at 11; Dkt 21 at 4.]

Plaintiff's argument is based on his statement at the hearing that he "pay[s] out of pocket" for his medical care. [R. at 59.] At that time, the ALJ inquired into whether Plaintiff had any kind of insurance coverage. [*Id.*] Plaintiff responded that he had too many assets to qualify for Medicaid and that he had participated in the Healthy Indiana Plan for uninsured Indiana residents. [*Id.*] Thus, even if the ALJ's opinion did not specifically mention that Plaintiff paid out of pocket for healthcare, the ALJ was still clearly aware that Plaintiff had encountered difficulty finding affordable coverage. Moreover, Plaintiff's lack of treatment was only one factor among many addressed in the ALJ's credibility determination. [*See* R. at 23-26.] Thus, even if the ALJ did err by not specifically addressing Plaintiff's financial situation in his opinion, his credibility finding was still supported by substantial evidence. *See, e.g.*, *Anderson v. Colvin*, No. 13-C-0788, 2014 WL 5430275, at *33 (E.D. Wis. Oct. 25, 2014) ("While the ALJ must provide 'specific reasons' for his finding, the court will not reverse just because the ALJ failed to discuss each and every one of SSR 96–7p's credibility factors."). As a result, the ALJ's credibility analysis was not flawed, and the Court has no need to remand this case to correct that analysis.

## Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision that Christopher Simcoe is not entitled to Disability Insurance Benefits or Supplemental Security Income. The Magistrate Judge therefore recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be

filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  04/03/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Joseph W. Shull
jshull@joeshull.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov