UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER S. SIMCOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-01488-SEB-MJD |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of SSA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Christopher Simcoe not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). Plaintiff filed applications for DIB and SSI on August 23, 2011, alleging an onset of disability on March 12, 2009. R. at 18. Plaintiff's applications were denied initially on October 11, 2011 and on reconsideration on December 19, 2011. *Id*. Plaintiff requested a hearing, which occurred before Administrative Law Judge ("ALJ") Ronald Jordan on April 11, 2013. *Id*. at 35; Docket No. 13. The ALJ determined that Plaintiff had not been disabled at any time from the alleged date of onset through the ALJ's May 16, 2013 decision. *Id*. at 29. After the Appeals Council denied his request for

1

review on July 12, 2014, the Commissioner's decision became final, and Plaintiff timely exercised his right to judicial review under 42 U.S.C. § 405(g). This case was referred for consideration to Magistrate Judge Dinsmore, who on April 3, 2015 issued a Report and Recommendation that the Commissioner's decision be upheld because it was supported by substantial evidence and was otherwise in accord with the law. R&R at 21; Docket No. 22. This cause is now before the Court on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation.

## Standard of Review

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

## Discussion

Plaintiff alleged in his DIB and SSI application that he had an onset of disability on March 12, 2009. R. at 18. He was 39 years old at the time of the alleged onset, and had past work experience as a retail store assistant manager, as a restraint assistant manager, and as a warehouse truck loader. *Id.* at 40–42. He claimed disability because of vascular disease in his left leg, a fracture in his right hand, depression, obesity, and a cervical neck injury. *Id.* at 20–22. The ALJ determined, with the help of a vocational expert ("VE"), that Plaintiff had not been under a disability at any time from the alleged date of onset through the ALJ's May 16, 2013 decision. *Id*. at 29.

At Step One of his five-step analysis of the claim, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. *Id*. at 20. At Step Two, the ALJ found that Plaintiff suffered from two severe impairments: vascular disease in his left leg and obesity. *Id*. at 21–22. At Step Three, the

ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a "listed impairment" under 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 22. Specifically, the ALJ considered and rejected Listing 4.11 (chronic venous insufficiency), and he found that there was no evidence that Plaintiff's obesity, for which there is no individual listing, "considered alone or in combination with all other impairments, meets or medically equals any listing." *Id.* At Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional limitations:

> [S]edentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: lift, carry, push, or pull ten pounds occasionally and five pounds frequently; stand and walk for two hours in an eight hour workday day at intervals of five or ten minutes spread evenly throughout the day; sit for six hours during an eight hour workday, but must have the opportunity to stand at his work station for up to five minutes each hour at his discretion; occasionally stoop, balance, crouch, crawl, kneel, and climb stairs or ramps; no work around hazards such as unprotected heights or unguarded, dangerous moving machinery; no climbing ladders, scaffolds, or ropes; no walking on wet or uneven surfaces.

*Id*. at 22. Then the ALJ determined that Plaintiff's RFC prevented him from performing any of his past relevant work. *Id.* at 28. At Step Five, the ALJ found that "[t]ransferability of job skills is not material to the determination of disability" for a claimant with Plaintiff's profile. *Id.* at 28–29. He then consulted a VE, who testified that a hypothetical person of Plaintiff's age, education, work experience, and RFC, could perform jobs such as interviewer (with 500 positions available regionally and 32,000 nationwide), check cashier (10,000 regionally and 600,000 nationwide), and telemarketer (5,000 regionally and 340,000 nationwide). *Id*. The ALJ determined, based on the VE testimony, that these

jobs existed in significant numbers in the regional and national economy, leading him to the conclusion that Plaintiff was not disabled. *Id.* at 29. Magistrate Judge Dinsmore, in his Report and Recommendation, affirmed the ALJ report, concluding that it was supported by substantial evidence. R&R at 21–22.

Plaintiff raises two objections to the Report and Recommendation. First, he alleges that Magistrate Judge Dinsmore erred in rejecting his challenge to the ALJ's finding that transferability of job skills was not material. *See* Pl.'s Obj. 1–2; Docket No. 22 at 8; R&R at 8. Second, he objects to the Magistrate Judge's determination that Plaintiff could perform "significant numbers" of jobs in the regional and national economy. *See* Pl.'s Obj. 2–3; R&R at 8–10.

**I. Transferability**

Plaintiff argues that the ALJ erred in determining that "transferability is not an issue[,]" and in concluding that jobs as a check cashier and telemarketer, which are classified as "semi-skilled," are available to Plaintiff. Pl.'s Obj. 1; R. at 28–29.

The Dictionary of Occupational Titles defines check cashier and telemarketer as "semi-skilled" jobs. *See* R. at 63. As Plaintiff correctly notes, the ALJ did not make any specific finding about whether Plaintiff's past work had given him skills that transfer over to check cashier and telemarketer positions. Instead, the ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant had transferable skills." R. at 28.

5

Social Security Ruling ("SSR") 82–41 requires an ALJ "to make certain findings of fact" about the transferability of job skills, but only in cases "[w]hen the issue of skills and their transferability must be decided." S.S.R. 82–41. The ALJ properly consulted the Medical Vocational Guideline Rules in determining the relevance of transferability. R. at 28–29; 20 C.F.R. pt. 404, subpt. P, App. 2., Rules 201.27–29. These rules, commonly known as the "grids," are based on vocational factors such as age, education, and work experience, in combination with each of the possible exertional levels–i.e. sedentary, light, medium, heavy, and very heavy. Based on the interaction of these factors, the grids may direct a finding that a claimant is or is not disabled. *Martinez v. Colvin*, No. 12 C 3888, 2013 WL 6696177, at *14 (N.D. Ill. Dec. 18, 2013); *see also* 20 C.F.R. pt. 404, subpt. P, App. 2., Rules 202.20–22.

Often, as is the case here, a claimant's RFC varies to some degree from the exertional levels captured by the grids. For example, an individual's RFC can be sedentary work with additional limitations, while the grids only advise for a sedentary work level. The court in *Martinez v. Colvin*, No. 12 C 3888, 2013 WL 6696177, at *14 (N.D. Ill. Dec. 18, 2013) faced a similar situation; there, the plaintiff's RFC was light work with additional limitations. *Id.* The court found that the additional RFC limitations prevented complete adherence to the grids. *Id.* However, the court explained that despite the fact that the grids were not controlling, the guidelines' conclusions with respect to transferability remained applicable:

> The ALJ recognized that because Plaintiff has limitations impeding the full range of light work, the Grids were not conclusive and a VE had to be consulted. Nevertheless, because the Grids presumptively determine that

> transferability of skills is not an issue for a person of Plaintiff's age, education, and communication skills, the ALJ was not required by S.S.R. 82–41 to determine whether she has any transferable work skills.

*Id.* at *15 (citations omitted). *See also Williams v. Colvin*, No. 5:13–cv–180, 2014 WL 1681707, at *12 (D. Vt. Apr. 28, 2014) (holding the ALJ correctly found that transferability was not material where plaintiff was a younger individual, had at least a high school education, and had a sedentary to light work RFC with additional limitations); *Putnam v. Colvin*, No. CV–12–00543–PHX–JAT, 2014 WL 1053608, at *8 (D. Ariz. Mar. 19, 2014) (holding the ALJ properly determined that transferability was not material where plaintiff had a sedentary RFC with additional limitations); *James v. Colvin*, No. 3:12–CV–01815–JO, 2013 WL 6145297, at *4 (D. Or. Nov. 21, 2013) (upholding ALJ's finding that transferability was not material where plaintiff was closely approaching advanced age, had high school and limited college education, could communicate English, and had a light RFC with additional limitations).[1] Because the plaintiff's demographic profile directed a result of not disabled regardless of her past relevant work and transferability of skills, the *Martinez* court concluded that transferability was not material. *Martinez,* 2013 WL 6696177, at *14; *see also* 20 C.F.R. pt. 404, subpt. P, App. 2., Rules 202.20–22. Though the aforementioned cases are not binding on this Court, we find their analysis persuasive.

---

[1] Plaintiff argues that *Martinez* is not analogous to the present case because the plaintiff in *Martinez* was limited to light work with additional limitations, while Plaintiff is limited to sedentary work with additional limitations. Pl.'s Obj. 1-2. However, as we have shown above, the transferability analysis in *Martinez* has been used by other district courts, for various plaintiffs with differing exertional limitations. *See* Chart. 20 C.F.R. pt. 404, subpt. P, App. 2., Rules 201.27–29.

Here, the ALJ correctly assessed that Plaintiff was a "younger individual" with "at least a high school education [who] is able to communicate in English." R. at 28; 20 C.F.R. pt. 404, subpt. P, App. 2., Rules 201.27–29. Additionally, as discussed above, the ALJ determined that Plaintiff's RFC was sedentary with additional limitations. R. at 22. Because of these additional limitations, the ALJ correctly determined that the grids were not directly applicable to Plaintiff's situation. *Id.* at 29.  Because of Plaintiff's demographic profile, grid rules 201.27–29, which lay out the guidelines for individuals of a younger age with at least a high school education and a sedentary RFC, direct a result of not disabled regardless of previous work experience and transferability of skills. *See* 20 C.F.R. pt. 404, subpt. P, App. 2., Rules 201.27–29. Based on these rules, the ALJ correctly determined that while Plaintiff's additional RFC factors limit the range available positions, they do not alter the guidelines' conclusion that transferability is not an issue for a person with Plaintiff's demographic profile. The grids presumptively determine that transferability of skills is not material for someone—such as Plaintiff— who is a younger individual, who has at least a high school education, and who can communicate in English. *See Martinez*, 2013 WL 6696177, at *15; 20 C.F.R. pt. 404, subpt. P, App. 2., Rules 201.27–29. Thus, the ALJ did not err in determining that "semi-skilled" jobs, such as check cashier and telemarketer, may be considered available to Plaintiff.

## II.     Significant Number of Jobs in the Regional and National Economy

As part of his analysis at Step Five, the ALJ was required to determine whether significant jobs were available to Plaintiff in the regional and national economy. The ALJ

found, in consultation with a VE, that the positions of interviewer (500 positions available regionally and 32,000 nationwide), check cashier (10,000 regionally and 600,000 nationwide), and telemarketer (5,000 regionally and 340,000 nationwide) constituted a significant number of jobs in the regional and national economy that Plaintiff could perform. R. at 29.

We have rejected Plaintiff's argument that the ALJ should have disregarded available check cashier and telemarketer positions based on the transferability of skills. Pl.'s Obj. 1; R&R at 8; Tr. 29, 63. The combined jobs (15,500 regional and 972,000 national) from telemarketer, check cashier, and interviewer positions are significant for the purposes of Step Five. "[I]t appears well established that 1,000 jobs constitutes a significant number." *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (citing *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009)).

Even if the ALJ had only considered the number of jobs for the interviewer position, he would likely have reached the same conclusion. While Plaintiff is correct in noting that there is no Seventh Circuit precedent explicitly ratifying 500 regional and 32,000 national jobs or less as significant, other courts of appeals have affirmed ALJ findings that similar figures sufficed. *See Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 regional jobs is a significant number); *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (200 regional jobs is a significant number). Additionally, the Seventh Circuit has shown approval of numbers less than 500 regional and 32,000 national jobs when determining significance. "As few as 174 jobs has been held to be significant[.]"

9

*Liskowitz*, 559 F.3d at 743 (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir, 1987)).[2] While the question is not before us, it is likely that remand would not be warranted even if the ALJ's Step Five analysis had compelled the conclusion that only interviewer positions were available to Plaintiff. *Issacs v. Barnhart*, No. 4:05-CV-00185-DFH-WGH, 2006 WL 3240114, at *9 (S.D. Ind. Oct. 13, 2006); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (noting that under the doctrine of harmless error, no remand is necessary when "it is predictable with great confidence that the agency will reinstate its decision").

### Conclusion

Based on our *de novo* review, we find that neither of Plaintiff's objections to the Magistrate Judge's Report and Recommendation has merit. There is no reason to conclude that the ALJ erred either in finding that transferability was not material, or in finding Plaintiff could perform a significant number of jobs in the regional and national economy. Accordingly, Plaintiff's objections to the Magistrate Judge's well-reasoned Report and Recommendation are OVERRULED, and we ADOPT the recommended ruling set forth therein.

IT IS SO ORDERED.

Date: _____06/29/2015_____

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[2] The Seventh Circuit used "174 jobs" as a reference point to show that 4,000 regional jobs was more than significant for Step Five determination. "Liskowitz does not argue that 4,000 jobs is insignificant; nor would such an argument be plausible." *Liskowitz*, 559 F.3d at 743.

Distribution:

Joseph W. Shull
jshull@joeshull.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov